```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA
```

CARRIE C. MILLER,              )
                               )
          Plaintiff,           )
                               )
v.                             )     Case No. CIV-15-452-RAW-KEW
                               )
NANCY A. BERRYHILL, Acting     )
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Carrie C. Miller (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on March 19, 1968 and was 47 years old at the time of the ALJ's decision.  Claimant obtained her GED. Claimant has no prior relevant work.  Claimant alleges an inability to work beginning January 5, 2012 due to limitations resulting from asthma, hepatitis C, anxiety, PTSD, depression, osteoarthritis, lumbar spine disorders, schizoaffective disorder, bipolar disorder, and panic disorder.

**Procedural History**

On January 17, 2012, Claimant protectively filed for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 26, 2015, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Luke Liter by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. The ALJ entered an unfavorable decision on April 21, 2015. The Appeals Council denied review on September 23, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a full range of work at all exertional levels with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper credibility determination; (2) failing to assess a supported RFC which takes all of Claimant's limitations into consideration; and (3) failing to fully develop the record.

4

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of mild cognitive impairment, bipolar disorder, general anxiety disorder, marijuana abuse, and methamphetamine abuse. (Tr. 17). The ALJ concluded that Claimant retained the RFC to perform a full range of work at all exertional levels. The ALJ, however, found that Claimant was limited by the non-exertional restrictions to simple and some complex tasks (defined as semi-skilled work with a specific vocational preparation (SVP) of 3-4), was unable to have contact with the public, and was only able to have superficial contact with co-workers and supervisors. (Tr. 20).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of industrial cleaner, kitchen helper, and a sorting job, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 26). As a result, the ALJ found Claimant was not disabled since January 17, 2012. (Tr. 27).

Claimant first contends the ALJ evaluated her credibility inappropriately. Claimant testified that she had not had a job since her release from incarceration on January 5, 2012. She receives food stamps and lives with her bedridden mother. (Tr.

5

344). She stated that she had no vehicle in which to get around. Claimant also testified that she was depressed and did not feel like getting up off of the couch. She did not "feel like doing nothing. I don't feel like being around nobody. I don't feel like nothing. I mean nothing, I feel nothing really." Claimant does not have a driver's license. (Tr. 345).

Claimant stated she takes Valium twice a day. She uses an inhaler for asthma. (Tr. 353). She also testified that she was placed on four different medications by a psychologist but that she stopped taking one because it broke her out in a rash and the others made her "homicidal and suicidal so I was talking crazy stuff off my head." (Tr. 345-46).

Claimant smokes marijuana two to three times daily since her father died. (Tr. 347-48). She had not used methamphetamine since his death in August of 2014 but she used it ten times prior to that event in order to relieve stress. (Tr. 349).

Claimant makes sure her bedridden mother has water and something to eat. She also washes her mother's clothes. She cannot lift her mother. (Tr. 350).

Claimant does not go to the doctor more often because she does not have a medical card. She obtains her drugs from friends and cigarettes from her mother. Id.

Claimant stated that she sits at home, watches TV, and interacts with her dog during the day. She sleeps a lot and stays "stressed out." She gets up sometimes and goes to town to grocery shop with her cousin. She does not like being in town. She would prefer "to sit at home with the windows covered up so people don't look inside the house." (Tr. 350-51).

Claimant testified that she does not have many friends. She smokes marijuana with a neighbor who lives a couple of houses down from her. Occasionally, she goes to the neighbor's house, but she does not really like to be around people. (Tr. 351).

She has not been to the doctor in quite awhile. She refills her inhaler by using her mother's medical card. She also uses a nebulizer. (Tr. 353-54).

Claimant testified that she has trouble breathing in hot and cold weather when she over exerts herself such as when mopping the floor. (Tr. 354). Claimant also states she has trouble with her bladder such that she has to urinate four times in one hour. (Tr. 355). She has not been diagnosed with a condition to attribute to this frequency of urination. Id.

Claimant stated she experiences low back pain which goes down her right leg. The muscle in her leg will be like a charley horse to the point that she cannot walk. She experiences this trouble at

least once per month. The condition causes her pain. Id. She does not take pain medication as she does not have any. (Tr. 356). Claimant's breathing difficulties allegedly prevents her from walking a block or two. It also hurts her back to walk. Id.

When Claimant shops, she walks for about 30 minutes. Her children usually help with carrying the groceries. (Tr. 357).

Claimant's mental health issues began when she was 15 when her parents were divorced. She believes the problem has gotten worse. Id. The Valium takes away her anxiety. She is always hyperactive. She experiences panic attacks "[p]retty much 50 times a week" where she feels hopeless, that nothing is going to change. (Tr. 358).

Claimant sleeps all day long if she can. She loves to read but does not do it anymore. Id. Claimant states she does not sleep well at night and has dreams of killing somebody or hurting somebody or somebody hurting her. (Tr. 359-60).

Claimant has no interest in doing anything and only had energy when she did methamphetamine. (Tr. 360). She feels people are judging her and they lie to her all of the time. Id.

Claimant also testified that she has trouble with her neck and right shoulder. She experiences migraine headaches which make her sick. She loses feeling in her right arm which causes her to drop things. (Tr. 361). She elevates her right leg. Id.

8

Claimant stated that she cannot sit for six hours or walk or stand for six hours because her leg will start hurting and go to sleep. (Tr. 362).

The ALJ found inconsistencies in Claimant's testimony. He stated in his decision that Claimant's testimony to minimal activities was inconsistent with taking care of her mother who was in a wheelchair. The ALJ related that Claimant takes no medications and had sporadic treatment. Although Claimant claimed several mental health issues, she never sought treatment from a mental health specialist. She testified to 50 anxiety attacks per week which the ALJ found to be not believable. Her statements concerning drug use were not consistent compared to her statements during consultative examinations. As a result, the ALJ found Claimant's credibility was "significantly reduced." (Tr. 25).

Other than boilerplate language of what an ALJ can and cannot consider in a credibility determination, Claimant does not enumerate specific points of error in the ALJ's analysis. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such,

9

will not be disturbed when supported by substantial evidence.  Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ's analysis of Claimant's statements in

light of the documented record is accurate and supported by substantial evidence. The ALJ specifically made the required affirmative link to the evidence in assessing the accuracy of Claimant's statements by setting forth the inconsistencies in the statements. This Court finds no error in the ALJ's analysis.

**RFC Determination**

Claimant contends the ALJ should have found a more restrictive RFC based upon her mental and physical impairments. In February of 2012, Claimant was attended by Julie Clark, a nurse practitioner complaining of neck pain radiating to her right shoulder. (Tr. 219). Ms. Clark found that Claimant's neck muscles were symmetric with no tenderness to palpation and tender along the superior aspect of the trapezius. (Tr. 220). Ms. Clark assessed Claimant with muscle spasms and acute bronchitis. She was prescribed an antibiotic, pain medication, Valium and naproxen. Id.

On March 1, 2013, Claimant saw Dr. Myra Gregory complaining of back pain, neck pain, and anxiety. Dr. Gregory noted mild pain with full back flexion, pain with extension, pain with lateral bending, pain with lateral rotation, and perilumbar tenderness. Claimant complained that she hurt all over. She noted Claimant took a lot of medication and appeared to be an addict. Dr. Gregory assessed Claimant with thoracic spine pain, lumbago, and anxiety.

11

(Tr. 226). Dr. Gregory saw Claimant again in April of 2013 but she found Claimant was "strung out on drugs" and Dr. Gregory refused to see her again as she only wanted more drugs and had an obvious addiction. (Tr. 223).

Claimant was attended by Advanced Practice Nurse Janet Canada in August of 2013. Ms. Canada found that a July 2013 MRI revealed a mild broad disc protrusion at L4-L5 eccentrically worse posterolaterally on the left with mild left lateral recess stenosis. There was also mild bilateral foraminal stenosis due to lateral extension of the disc protrusion. (Tr. 325).

In January of 2014, Claimant was attended by Dr. Eric Broadway complaining of anxiety and depression. Claimant's drug use was noted as Claimant requested Valium but Dr. Broadway refused due to her addiction. (Tr. 269). Claimant was prescribed psychotropic medications. (Tr. 270).

Dr. Theresa Horton, a licensed psychologist, evaluated Claimant in May of 2012. She diagnosed Claimant with generalized anxiety disorder, panic disorder, major depressive disorder, recurrent, moderate, and a history of polysubstance abuse. (Tr. 190). She concluded Claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, though she may have difficulty with management of tasks as

they become more complex due to interference from poor coping skills and an inability to deal with stress. Claimant also appeared capable of adequate social and emotional adjustment into small, familiar social settings, though likely would do poorly in large public areas. Dr. Horton found Claimant would have a very poor and limited employment history and she could expect to see ongoing problems with long term adjustment into employment settings. (Tr. 190).

In May of 2013, Claimant was again evaluated by Dr. Horton. Dr. Horton diagnosed Claimant with mild cognitive impairment, generalized anxiety disorder, bipolar disorder NOS, predominantly hypomanic (recently and currently). (Tr. 237). Dr. Horton concluded that Claimant appeared capable of understanding, remembering and managing most simple and somewhat more complex instructions and tasks, though likely had increasing difficulty with management as tasks become more complex. Dr. Horton noted Claimant's many historical social problems including felony history and current social issues such as housing and transportation problems that complicated her life. Claimant appeared to be social and personable, and likely was capable of adequate social/emotional adjustment into many settings for short periods. However, she appeared very impulsive and likely had difficulty sustaining

13

activity for full time employment. She had a very poor employment history and reported having had several jobs for short periods of time, a pattern Dr. Horton found may be related to this problem, though she did also have an extensive history of problems with substance abuse. (Tr. 237).

Dr. Gary Lindsay reviewed Claimant's records in May of 2012 and concluded she could perform simple and some complex tasks. She could also relate to others on a superficial work basis but could not relate to the general public. Dr. Lindsay opined Claimant could adapt to a work situation. (Tr. 195).

Dr. Katherine Scheirman reviewed Claimant's records in June of 2012 and concluded her physical impairments were non-severe. She noted Claimant's limited treatment record and the full range of motion of her back, neck, and all joints. Her gait was stable and safe with appropriate speed. She experienced no problems with personal care. (Tr. 211).

In October of 2013, Dr. Donald Baldwin also found Claimant's physical condition to be non-severe. (Tr. 267).

The ALJ gave the opinions of Drs. Lindsay, Scheirman, and Baldwin "great weight." (Tr. 25). He gave Dr. Horton's opinion "moderate weight." Id. While Dr. Horton's opinion questioned Claimant's ability to function in full employment, it placed no

restrictions greater than that provided by the ALJ in the RFC. The physical examinations did not support further restrictions in her ability to perform at all exertional levels with the limitations imposed for mental impairments as outlined by Dr. Horton.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment is supported by the opinion

and other objective medical evidence in the record.  No error is attributed to this evaluation.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 22nd day of February, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE